JUDGE PRYOR
delivered the opinion op the court.
The appellee, Jesse L. Wallace, instituted this action against the appellant, F. M. Aulick, for the recovery of a tract of land in the possession of appellant, claiming to have derived title under the last will of his father, Edward Wallace, sr. His right of recovery depends upon the construction given that instrument. The will is as follows:
“I, Edward Wallace, of the county of Pendleton and state of Kentucky, of sound mind and disposing memory, and being desirous to dispose of all sueh worldly estate as it hath pleased God to bless me with, give and bequeath the same in the following mannerAfter directing that certain notes shall be collected and the proceeds applied to the payment of the purchase money due for land bought by him, he devises fifty acres of his land in trust to his son John, and then proceeds to dispose of the residue of his estate. “ The remainder of the land — to wit, seventy-five acres — with all of my personal property of what nature or kind soever it may be, not hereinbefore particularly disposed of, I bequeath to my beloved wife, Isabella Wallace, during her natural life or as long as she remains my widow; but should she marry again, then in that case the land — viz., seventy-five acres — shall go to my infant son, Jesse L. Wallace, and the personal estate to my two infant daughters,” etc. He then proceeds to nominate his executors.
The widow renounced the provisions of the will, and died in the year 1857 without having again married. The appellant, by counsel, now insists that as the contingency upon which the appellee’s right to the land was made to depend never happened, he took nothing under the will. If the particular clause under which this claim is asserted by the appellee is to be literally construed and as having no connection with the other provisions of that instrument, it must be conceded that the devise of the land was made to him in *534 the event his mother (the widow) married, and upon no other contingency. In adopting such a rule it would not only be in disregard of the manifest intention of the testator, but in violation of the well established doctrine in the construction of such instruments. The intention of the testator, to be ascertained from the entire instrument, the will itself, is the well recognized rule of construction; and when applying this familiar principle to the instrument before us, there can be no doubt but that the testator intended to vest his widow with an estate for life or widowhood in the seventy-five acres of land and the remainder in fee to Jesse L. "Wallace. ITe intended to dispose of his whole estate, as is evidenced by the declaration in his will of his “ desire to dispose of all such worldly estate as it has pleased God to bless me with; I give and bequeath the same in the following manner.” He gave to his son John in trust fifty acres of land. He then devised the remainder of his land, seventy-five acres, all of his personal property of whatever kind, to his wife during her natural life, or as long as she remained his widow.
There is no doubt as to the character of the devise to his wife, and that this devise embraced all the estate, real and personal, owned by him and not previously disposed of. What then was the purpose and intention of the devisor as to the disposition of the estate after the death of his wife or her subsequent marriage? It is plain that he intended his son, Jesse Wallace, to have the land, and his two daughters the personal estate. There are no other devisees named by him to take this property, and in making this devise he evidently omitted the words “ when she dies,” which, when supplied, make the will read, “but should she marry again, or when she dies, then and in that case the seventy-five acres shall go to my infant son, Jesse L. Wallace, and the personal estate to my two infant daughters.”
Adopting the theory of appellant’s counsel, the provis *535 ions of this clause of the will are both unreasonable and absurd ; and while a devisor has the right to make such a will, and if such was his intention, to be gathered from the whole instrument, it is not within the power of the court to make a will for him by changing any of its provisions, still it is jilain in this case that the intention was to give'to his son and daughters all this estate when the wife’s interest in it terminated.
If the appellee is not entitled to the land, the result is that the land descended to the heirs-at-law of the testator, their right subject to be defeated by the happening of the contingency upon which the appellee had the right to enter, to wit, the marriage of the widow. The court must believe, in order to defeat appellee’s right of recovery, that it was the intention of the testator, if his widow died in six months after his death, his heirs-at-law were to take the land; but if she married within that time the appellee took it under the will. Such an unreasonable view can not be taken of the question presented when a contrary intention is manifested upon the whole face of the instrument, and when it is evident that the testator did not express hiniself, as was his intention, and as he supposed, he had done when the will was written.
The testator in this case seems to have taken it for granted that he had used the language necessary to vest these children with the remainder in the event of his wife’s death, and in the effort to provide for their enjoyment of it at an earlier period, to wit, on the marriage of the widow, omitted to express himself so as to effectuate his intention, being also satisfied that he had devised his whole estate.
Says Redfield on the law of wills, 454: “ It is an established rule in the construction of wills that -when it is evident the testator has not expressed himself as he intended to have done, and supposed he had done, and the defect is produced by the omission of some word or words, and when it is certain beyond *536 reasonable doubt what particular words were omitted, they may be supplied by intendment, and the will read and construed as if those words had been written.”
“To effectuate the clear intention, as appai’ent on the whole will, words and limitations may be transposed, supplied, or rejected.” (2 Williams on Executors, see. 978.) “And it is no objection to supplying the omission that different persons may differ in regard to which of two or more words of similar signification will more appropriately supply the omission.” (1 Jarman, 456.)
In the case of Kellogg v. Mix (37 Conn.) the words net income of my estate were inserted by the court to supply an omission made by the devisee in the attempt to provide a maintenance for his wife and daughter.
In the case of Butterfield against Hammant (105 Mass.) it is said, “words can be supplied by the court only when necessary to carry out the apparent intention of the testator as gathered from the whole will.”
In Wheeler v. Withers (16 Simons, 505) the court supplied the words “ under twenty-one years of age,” and in Cotton v. Stenlake (12 East, 515) the words “ during their lives” were rejected, thereby making an estate for life one in fee simple.
In Abbot v. Middleton (21 Beav. 143), where a gift once was made by the testator in the event of his son dying before his mother, it was held by the Master of the Rolls that the words “ without leaving a child ” should be supplied, as that was the obvious intention of the testator, two of the judges dissenting. This case was affirmed by the House of Lords.
Roper on Legacies establishes as one of the rules of construction that “where the testator, in the disposition of his property, overlooks a particular event which, had it occurred to him, he would in all probability have provided against, the court will not rectify the omission by implying or inserting the necessary clause, etc.”
*537 The recognition of this elementary rule does not militate against the construction given the will under consideration, as it is not only probable that the devisor could have supplied the omission, but that such was his clear intention, as is apparent upon the whole will, and to supply the words is but adhering to the rule that such an instrument “must be most favorably expounded to pursue, if possible, the intention of the testator, and to effectuate such intention when it is certain from the will itself words and limitations may be transposed, supplied, or rejected.” (2 Williams on Executors, 714.)
Eminent jurists differ in the application of these rules in the construction of wills, and cases will be found holding a doctrine opposed to the principle settled in this case; but, as said by Redfield in his able treatise on the law of wills, “those who lay aside a too strict adherence to technicalities, while they assume more responsibility will, in the greater number of cases, effect the more perfect justice. It will more generally appear in the end that they were only acting upon the more perfect , comprehension of an imperfectly developed principle which in the next age, perhaps, becomes so familiar as to excite no surprise.”
The rational construction of this will as to the intention of the devisor, to be gathered from its several provisions, is that he not only intended to vest his son with the title to this land after his mother’s death or marriage, but supposed he had done so by the provision in question, and this being in accordance with the judgment below, the same is now affirmed. The amended answer was properly rejected.'"