## No. 16,328.

LIEBHARDT *v.* AVISON ET AL.

(229 P. [2d] 933)

Decided March 5, 1951.    Rehearing denied April 2, 1951.

Mr. CARL J. SIGFRID, Mr. HUBERT D. HENRY, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. L. H. LARWILL, Mr. D. E. WOLFE, JR., for defendants in error Avison and Trust Company.

Mr. WALTER W. BLOOD, for defendant in error Colorado National Bank.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

THIS case involves the construction of section (c) of the sixteenth paragraph of the will of Louis F. Liebhardt, deceased. It arose when the Colorado National Bank, as testamentary trustee, filed its complaint in the nature of inter-pleader, alleging that conflicting claims were being made to certain of the trust property, and asking that the disputing claimants be required to interplead their rights and claims.

Paragraph sixteenth of the will reads as follows:

"I give, devise and bequeath to my sisters, Minnie K. Liebhardt and Laura L. Liebhardt, as trustees, or to their successors in trust, as hereinafter specified, the following real estate in the City and County of Denver, Colorado, to-wit: [then follows legal description] and all of my 99,998 shares of the capital stock of The Iowa Realty Company, representing ownership of approxi-

mately an undivided one-half interest in [describing other parcels of real estate in Denver]. My said trustees or successors in trust shall maintain the said above described property in first-class order and condition out of the income from said property. In the event of the death of Minnie K. Liebhardt and Laura L. Liebhardt, I hereby appoint Harry G. Liebhardt and the Colorado National Bank of Denver successors in trust in the trust herein created, and I give, devise and bequeath to said joint successors in trust, as herein provided, the aforesaid real estate and stock, and in the event of the death of Minnie K. Liebhardt, Laura L. Liebhardt and Harry G. Liebhardt, I hereby appoint the Colorado National Bank successor in trust; all of which said trust fund, including said real estate and stock in this paragraph Sixteenth described, is bequeathed and devised upon the following uses and purposes, to-wit:

"(a) The net income of said real estate described in this paragraph Sixteenth, and of said stock of said The Iowa Realty Company, I give, devise and bequeath to Minnie K. Liebhardt and Laura L. Liebhardt, share and share alike, or to the survivor of them, for and during their natural lives, and upon the death of either of them, I give, devise and bequeath the said net income to the said survivor of them.

"(b) Upon the death of both Minnie K. Liebhardt and Laura L. Liebhardt, I give, devise and bequeath the net income of the undivided one-half interest in and to said [certain real estate in Denver] to my niece, Georgia Liebhardt Temple, for and during her natural life, and to her son Jack Liebhardt Temple, share and share alike, to be paid as hereinafter provided. * * *

"Upon the death of Georgia Liebhardt Temple, and when said Jack Liebhardt Temple shall have reached the age of thirty (30) years, then the entire undivided one-half interest in and to said [certain Denver real estate] shall be turned over and conveyed to said Jack Liebhardt Temple as and for his absolute property.

"Upon the death of Georgia Liebhardt Temple, and upon the death of Jack Liebhardt Temple without issue, before being entitled to receive and before receiving said property as above provided, then the net income of said undivided one-half interest in said [certain Denver real estate] shall be distributed, and I give, devise and bequeath the said net income as follows: one-eighth of said net income to the City and County of Denver, Colorado, to maintain a water and field lily garden in Washington Park; five-eighths of said net income to the Protestant Orphanages of Denver, Colorado, share and share alike, and one-fourth of said net income to be paid, yearly, to the Town of McGregor, Iowa, for park purposes.

"(c) Upon the death of both Minnie K. Liebhardt and Laura L. Liebhardt, I give and devise all my stock in the Iowa Realty Company, representing an undivided one-half interest in and to [certain Denver real estate] and an undivided one-half interest in and to [certain other Denver real estate] and the accumulations thereof and thereon, to my nephews Harry G. Liebhardt and Fred C. Liebhardt, share and share alike."

The findings of the trial court included the following facts: that Louis F. Liebhardt, the testator, died October 31, 1937, leaving surviving him his two sisters, Minnie K. Liebhardt and Laura L. Liebhardt, and also two nephews, Fred C. Liebhardt and Harry G. Liebhardt; that his sister Laura died intestate September 16, 1941; his nephew, Harry G. Liebhardt, died November 4, 1941; Minnie K. Liebhardt, his other sister, died intestate December 29, 1947; and following the death of the latter it became incumbent upon the Colorado National Bank, as the sole surviving trustee, to make distribution of the trust property. At that point the International Trust Company, as executor under the will of Harry G. Liebhardt, and Margaret S. Avison, widow of Harry G. Liebhardt, and residuary beneficiary under his will, claimed an undivided one-half interest in all of the property

given and devised "to my nephews Harry G. Liebhardt and Fred C. Liebhardt, share and share alike," under section (c), paragraph sixteenth of the will of Louis F. Liebhardt. This claim was resisted by Fred C. Liebhardt, the surviving nephew of Louis F. Liebhardt.

The conclusions of law of the trial court include the following:

"1. The Will of Louis F. Liebhardt is plain and unambiguous and the intent of Louis F. Liebhardt is expressed therein in clear and unambiguous language."

"4. Under and by virtue of the provisions of paragraph Sixteenth of said Will of Louis F. Liebhardt, and particularly sub-paragraph (c) of said paragraph Sixteenth, immediately upon the death of said Louis F. Liebhardt, defendant Fred C. Liebhardt and Harry G. Liebhardt each took an indefeasibly vested remainder in one-half of the 99,998 shares of the capital stock of The Iowa Realty Company herein above described, subject only to the life estates therein of Minnie K. Liebhardt and Laura L. Liebhardt and the survivor of them, which remainder interests attached to and continued in the real properties as described in paragraph 2 above immediately upon the substitution of said real properties for said stock. In addition, immediately upon the death of said Louis F. Liebhardt, said defendant Fred C. Liebhardt and Harry G. Liebhardt each took an indefeasibly vested interest in one-half of all net accumulations from said stock and from any properties substituted therefor from and after the death of said Minnie K. Liebhardt and said Laura L. Liebhardt and the survivor of them.

"5. The interests of said defendant Fred C. Liebhardt, as above described, have continuously remained, and are now vested, in him. The interests, as above described, of the said Harry G. Liebhardt, immediately upon his death, became a part of his estate and under his Will have passed to and are now vested in defendant Margaret S. Avison, formerly Margaret Scheve Liebhardt, the residuary legatee and devisee under his Will, and

defendant The International Trust Company, as Executor thereof, said interests in the real properties above described having passed to the said Margaret S. Avison and said interests in the net accumulations having passed to said The International Trust Company, as Executor as aforesaid."

Counsel for plaintiff in error filed six specifications of points, five of which center upon the principal question in the case, namely, whether the trial court erred when it held that upon the death of Louis F. Liebhardt an indefeasible vested remainder was created in Fred C. Liebhardt and Harry G. Liebhardt, and that upon the death of Harry G. Liebhardt the portion of the property in controversy became a part of his estate and under his will passed to, and is now vested in, his widow, Margaret S. Avison, formerly Margaret Scheve Liebhardt. Counsel summarize the position of plaintiff in error as follows:

"We, therefore, assert that the construction of this will, as to paragraph '(C)' of Clause 'Sixteenth' resolves itself into a matter of plain common sense and natural reason. It seems plain that the intention of the testator was, that neither Fred C. Liebhardt nor Harry G. Liebhardt should receive the property until and only when and if both Laura L. Liebhardt and Minnie K. Liebhardt had deceased and then only if living and in being. Harry G. Liebhardt died but Fred C. Liebhardt was alive. He undoubtedly took and received an undivided one-half of the realty and accumulations, and as to the remaining one-half, because of the omission from paragraph '(C)' of the words, 'or the survivor of them' passed to him as the surviving nephew of a class or into the residue and under the 'Eighteenth' clause to the residuary legatees and devisees, testator's sisters, Minnie K. Liebhardt and Laura L. Liebhardt, 'or the survivor of them.' The survivor was and is Minnie K. Liebhardt, whose estate is now being administered upon in the County Court of Jefferson County, State of Colorado.

"We further assert that the gift to Harry G. Liebhardt was not a vested remainder, but instead it was a contingent remainder, for the reason that the gift is made to depend on Harry G. Liebhardt surviving certain designated persons, namely, testator's two sisters. As long as the two sisters, or either of them lived, the gift was contingent."

We do not agree with the interpretation made by counsel for plaintiff in error. On the contrary, we believe that the trial court was correct in holding that the interest bequeathed and devised to testator's two nephews, Harry G. Liebhardt and Fred C. Liebhardt, under section (c), paragraph 16 of the will was a vested, and not a contingent, remainder.

All the litigants agree that the cardinal rule in the interpretation of a will is to determine the intention of the testator. *Platt v. Brannan,* 34 Colo. 125, 81 Pac. 755, and *Hignett v. Sherman,* 75 Colo. 64, 224 Pac. 411, are two of the numerous decisions so holding.

It will be noted that counsel contends that section (c), paragraph sixteenth, should be interpreted as if the last clause read: "to my nephews, Harry G. Liebhardt and Fred C. Liebhardt, share and share alike, *or to the survivor.*" (Italics supplied.) But in section (a) of paragraph sixteenth, the testator bequeathed all the net income to Laura L. Liebhardt and Minnie K. Liebhardt, share and share alike, "or to the survivor of them during their natural lives and upon the death of either of them I give, devise and bequeath the net income to the survivor of them." In section (c), as we have noted, the testator gave the remainder in equal shares to his two nephews, but stopped short of providing that the survivor should take. This brings into play immediately the rule of construction which we applied in *Williams v. Fundingsland,* 74 Colo. 315, 321, 221 Pac. 1084, that, "The use of different words in a will applying to the same subject matter, indicates that the testator had in view different results. 40 Cyc. 1402." In other words, in sec-

tion (a) he applied the principle of survivorship to the two life tenants, and in section (c) he withheld it in the case of the two remaindermen.

We are confronted with the same rule when we compare section (b) with section (c). In the former, testator indicated that he knew how to provide for an estate which should not vest immediately when he directed that the remainder, "when said Jack Liebhardt Temple shall have reached the age of thirty years," "shall be turned over and conveyed to said Jack Liebhardt Temple as and for his absolute property," but then provided that if he should die without issue before being entitled to receive and before receiving said property, as above stated, then the trust was to continue and the income therefrom be used for various charitable and benevolent purposes. Thus in section (b) there is a provision for deferment of vesting. Jack Liebhardt Temple had to live to be thirty years of age before taking. Then follows a provision for conveyance over if the conditions for the deferred vesting are not fulfilled; but in section (c), as we have noted, the testator, in disposing of the remainder, uses the direct, unconditional words, "I give and devise to my nephews, Harry G. Liebhardt and Fred C. Liebhardt, share and share alike * * *." Counsel thus maintains that we should interpret the totally different words used in section (c) to read as if they provided for the same deferred vesting of the estate that was actually directed in section (b). It seems to us that a study of the will itself, without further argument, negatives the contention of the plaintiff in error.

In the earlier paragraphs of the will, second to fourteenth, inclusive, the testator has made outright gifts to various named beneficiaries. In most of these he has provided for their lapsing and falling into the residuum in the event the named beneficiary is not living at the time of his death. An exception appears in paragraph seventh of the will in which it is provided that the beneficiaries shall hold in trust for their children. Likewise, in para-

graph tenth, if the beneficiary is not living at the time of his death, then provision is made for payment to her issue, share and share alike. Having made all of the direct bequests with the foregoing varying provisions, the testator then created a $50,000 trust estate under paragraph fourteenth. Under paragraph fifteenth he created another trust in which he placed certain real estate, as well as securities having a market value of $50,000, to be used as a maintenance or protective fund for the safeguarding and protection of the real estate. As to this fund, Minnie K. Liebhardt and Harry G. Liebhardt were named as the primary trustees, the Colorado National Bank as joint and successor trustee, and Harry G. Liebhardt and Georgia Liebhardt Temple are named as life tenants as to the net income from both the real-estate and the protective fund, except that as to the latter the net income shall not be paid out until ten years after testator's death. Then follows a provision that if one life tenant dies, the other shall be entitled to all of the income in respect to both funds, with the remainder over after the death of the second life tenant to the issue of Georgia Liebhardt Temple, living at the time of testator's death, in equal shares, when they reach the age of twenty-six years. Finally, there is a provision that in case Georgia Liebhardt Temple's issue, living at the time of testator's death, die without issue before reaching the age of twenty-six years, and before receiving the trust property, then the trustee shall pay over the income to certain religious institutions.

It thus becomes evident from a study of other paragraphs of testator's will that he could, and did, by apt language, defer the vesting of a remainder to a time subsequent to his own death, make such vesting dependent upon the survival of the remaindermen until such time, and direct the disposition of the remainder in the event of the death of the remaindermen prior to the time fixed for such vesting. We can only conclude that the testator himself had fully in mind the difference between a con-

tingent and a vested remainder. By the application of the rule in *Williams v. Fundingsland, supra,* we must conclude that testator did not intend to create a contingent remainder by section (c), paragraph sixteenth.

Other rules of construction support this conclusion. One rule is the law announced in *Hignett v. Sherman, supra,* that, "Unless the expressed intention of the testator clearly appears in the will to the contrary, an absolute, rather than a qualified, a vested, rather than a contingent, interest or estate is created." Or, as was said in *Carmichael v. Cole,* 83 Colo. 575, 577, 267 Pac. 408, "Unless the expressed intention of the testatrix 'clearly appears in the will to the contrary,' a vested, rather than a contingent, interest is created. *Hignett v. Sherman,* 75 Colo. 64, 224 Pac. 411; *Greenwood v. Greenwood,* 63 Colo. 445, 167 Pac. 1179; *Cook v. McDowell,* 52 N. J. Eq. 351, 30 Atl. 24; Page on Wills (2d Ed.), §§1110, 1121."

In *Jones v. Pueblo Savings & Trust Co.,* 103 Colo. 455, 460, 87 P. (2d) 2, we said, "The law favors the vesting of estates, especially when given to children or those standing in like relation to the testator, and under such circumstances it imposes such a construction of the terms of a will as will create a vested estate if possible." It will be noted in the instant case that the testator died leaving no children, and after his two sisters, whom he named as life tenants, his two nephews were his next of kin.

Another rule supporting the conclusion that the two nephews took vested estates under section (c) is the rule that the estate vests at the death of the testator, unless a contrary intention appears from the will. The same authorities that we have cited in the foregoing paragraph also support this proposition.

It is argued by plaintiff in error that even if it be assumed that the two nephews, Harry G. Liebhardt and Fred C. Liebhardt, take vested estates under the trust created in the sixteenth paragraph of the will, they take

as a class and that upon the death of Harry the surviving nephew should take as the surviving member of that class. An answer to that argument would seem to be that the testator has not so provided, although he has shown elsewhere in the will that he knew how so to provide had he the intention.

We believe also that the rule laid down in our statute, section 4, chapter 40, '35 C.S.A., as amended by S.L. '39, page 285, §1, governing joint tenancies, is applicable here, and raises a presumption against the creation of joint tenancies. We recently have applied that rule in *Garvin v. Ruston,* 121 Colo. 494, 218 P. (2d) 1064.

Finally, counsel argue that the interest which Harry G. Liebhardt took under section (c), paragraph sixteenth, should in any event be treated as a lapsed legacy, in which event the heirs of the testator would share, including the present plaintiff in error. We already have noted that elsewhere in his will testator knew how to provide for a lapsed legacy. He has not done so here. Furthermore, this argument could only be applicable in the event that Harry G. Liebhardt's interest under this paragraph was a contingent, instead of a vested, remainder. It cannot apply as long as Harry G. Liebhardt has a vested remainder, because if it is the latter it then becomes part of his estate and is disposed of under the terms of his will. This second interpretation proposed by counsel for plaintiff in error also runs counter to the rule that, in the construction of wills, intestacy is to be avoided if possible.

It seems that counsels' argument amounts to this, that in the simple case of a trust providing income to A for life, remainder to B, if B predeceases A, then B has only a contingent remainder, and, not having survived A, his estate takes nothing. Actually in such a case B's remainder interest is vested, and, insofar as the title in the remainder interest is concerned, it is immaterial whether or not he survives A. If B survives A, he takes

directly; if he does not survive A, the remainder interest is an asset in his estate. Exactly the same principle is involved in the instant case. It applies merely to the situation where there are two life tenants instead of one, and two remaindermen instead of one.

Another specification relates to the fees and costs awarded by the trial court. These were a $200 service fee to the trustee bank, and $600 for its attorney and costs. These fees were ordered to be paid out of all rentals accumulated in the trustees' hands arising from the entire property covered by section (c), paragraph sixteenth of the will. This results in charging plaintiff in error, Fred C. Liebhardt, with one-half of such fees and costs. He argues that all should be assessed against the Harry G. Liebhardt share, which is the only property involved in this litigation. Counsel for defendant in error cite section 50 B (2), pages 104-107, 48 C.J.S., relating to interpleader, where it is stated generally as to attorneys' fees, that such allowance rests in the sound discretion of the court and, while usually charged against the fund in controversy, may be assessed against the claimant who was in the wrong. It is argued that in this particular case, and the record so shows, plaintiff in error instituted another action in the Denver district court for a declaratory judgment construing the Louis F. Liebhardt will, raising the same questions that are here involved. This required the time and attention of the trustee bank and its attorney, and included the preparation and filing of pleadings and court actions. Under these circumstances, we do not believe that the trial court abused its discretion either in respect to the amount of the fees or in charging one-half thereof to the plaintiff in error.

We believe the same result would be reached if we applied the principles laid down in 69 Corpus Juris, at pages 905-907, relating to the allowance of counsel fees in actions involving the construction of wills. Among the numerous cases there cited, *In re Donges' Estate,* 103

Wis. 497, 79 N.W. 786, 74 Am. S. R. 885, supports the use by the executor of estate funds, while in *Daggett ·v. Taylor,* 124 Me. 88, 126 Atl. 338, the court approves the payment of attorney's fees and costs by a testamentary trustee out of the trust funds.

The judgment is affirmed.